IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD E. CHAVEZ,

    Plaintiff,

v.                                                           Civ. No. 21-596 GBW

KILOLO KIJAKAZI,
*Acting Commissioner of the Social*
*Security Administration*,

    Defendant.

## ORDER GRANTING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse and Remand, With Supporting Memorandum. *Doc. 20.* For the reasons explained below, the Court GRANTS Plaintiff's Motion and REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an initial application for SSDI and SSI on January 8, 2019, alleging disability beginning May 5, 2017. Administrative Record ("AR") at 218, 224. Plaintiff's application was denied on initial review on March 11, 2019, AR at 90, 108, and again on reconsideration on September 5, 2019, AR 131, 151. On September 8, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 36-71. The ALJ issued an unfavorable decision on October 9, 2020. AR at 16, 30. Plaintiff sought review from the Appeals Council, which denied review on April 29, 2021, AR at 1, making the ALJ's

denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On June 29, 2021, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *See doc. 1.* On January 11, 2022, Plaintiff filed his Motion to Reverse and Remand, With Supporting Memorandum. *See doc. 20.* The Commissioner responded on April 13, 2022. *See doc. 24.* Briefing on Plaintiff's Motion was complete on April 28, 2022, *see doc. 26*, with the filing of Plaintiff's reply, *see doc. 25*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III. ALJ EVALUATION

#### A. Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual to be disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

---

[1] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability and other relevant regulations is the same for both benefits but is codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

3

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On October 9, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI and SSI. *See* AR at 16, 30. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since May 5, 2017, the alleged onset date." AR at 18. At step two, she found that Plaintiff has "the following severe impairments: degenerative disc disease, left shoulder Bankart tear, asthma, depression with psychotic features, bipolar disorder, anxiety, PTSD (posttraumatic stress disorder), borderline personality disorder, and substance use disorder." AR at 18.

At step three, the ALJ found that Plaintiff's severe impairments – both individually and in combination – did not meet or equal the severity of an impairment in the Listings. AR at 18-19. The ALJ also determined that Plaintiff had a marked limitation in interacting with others and moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace;

and adapting or managing oneself, but these limitations did not satisfy the Paragraph B criteria for a finding of disability under Listings 12.00. AR at 19.

At step four, the ALJ found that Plaintiff does not have the RFC to return to his past employment as a hospital cleaner (Dictionary of Occupational Tables ("DOT") 323.687-010 or supervisor of janitorial services (DOT 381.137-010), AR at 28, but does have the RFC "to perform light work as defined in 20 CFR 404.1567(b)," subject to several physical and mental limitations, AR at 20. With respect to Plaintiff's mental limitations, the ALJ found that Plaintiff can "perform simple, routine tasks, with no fast-paced production work," and "make simple work decisions," and Plaintiff's "work should be performed in the same location every day." *Id*. The ALJ also determined that Plaintiff "can occasionally interact with co-workers and supervisors, but rarely interact with the general public, defined as less than 10% of the workday." *Id*.

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR at 22. She held, however, that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not "entirely consistent" with the medical evidence and other evidence in the record. *Id*. In making this assessment, the ALJ noted that the claimant's "conservative" mental health treatment history was inconsistent with his "allegations and subjective complaints." *Id*. at 28.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that he can perform jobs that exist in significant numbers in the national economy. AR at 29-30. Specifically, the ALJ found that Plaintiff can perform the requirements of three representative occupations: (1) marker (DOT 209.587-034); (2) router (DOT 222.587-038); and (3) collator operator (DOT 208.685-010). *Id*. Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security administration defines the term) from May 5, 2017, through the date of her decision. AR at 30.

### IV. PARTIES' POSITIONS

Among other claims, Plaintiff asserts that the ALJ committed legal error at step four when she discredited Plaintiffs' statements about the intensity, persistence, and limiting effects of his symptoms based on his limited treatment history without assessing the potential reasons for why he may not have pursued treatment. *See doc. 20* at 10-11. Defendant counters that the ALJ "appropriately considered the type of treatment Plaintiff received" and properly assessed the Plaintiff as not disabled given the objective medical evidence. *Doc. 24* at 8-9. For the reasons described below, the Court agrees with Plaintiff that the ALJ committed legal error when she failed to evaluate sufficiently Plaintiffs' reasons for not pursuing mental health treatment. Because this error constitutes sufficient grounds for remand, the Court declines to address Plaintiff's other claims of error.

## V. ANALYSIS

SSA regulations prescribe a two-step process for evaluating a claimant's statements about their mental impairments. Step one asks "whether there is an underlying medically determinable . . . mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(b). If such an impairment is established at step one, step two requires the ALJ to "evaluate the intensity and persistence of [those] symptoms" to determine the extent to which the symptoms limit an individual's "capacity for work." 20 C.F.R. § 404.1529(c)(1). In making the step two assessment, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms." 20 C.F.R. § 404.1529(c)(1)-(3).

When the ALJ evaluates a claimant's symptoms for the step two assessment, the ALJ must avoid "conclusory" findings, and she must provide "clearly articulated" and "specific reasons for the weight given to the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. Although an ALJ does not need to complete a "formalistic factor-by-factor recitation of the evidence," *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.

2000), an ALJ must provide "clear and specific reasons" for her findings "that [are] specifically linked to the evidence in the record," *Hagemier v. Kijakazi*, Case No. CIV-21-35-SPS, 2022 WL 3043647, at *4 (E.D. Okla. Aug. 1, 2022).

As part of her analysis of the claimant's symptoms, the ALJ may evaluate the consistency of the statements that an individual makes about his symptoms as compared to the rest of the evidentiary record. If a claimant's statements about the "intensity, persistence, and limiting effects of symptoms are consistent" with the record, the ALJ will determine that the symptoms are "more likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8. If the statements are inconsistent with the remainder of the record, the ALJ will find that that the symptoms are "less likely to reduce" the claimant's capacity to work. *Id*.

While evaluating the consistency of the claimant's symptom statements and the extent to which the claimant's symptoms may affect his ability to work, the ALJ may also consider treatment that the claimant has undergone for any of his symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v); *see also* SSR 16-3p, 2017 WL 5180304 at *9. Notably, if the ALJ chooses to consider the "frequency or extent of the treatment sought" by the claimant, the ALJ *may not* rely on this information to "find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of

his or her complaints." SSR 16-3p, 2017 WL 5180304 at *9; *see also Miranda v. Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (holding that the ALJ's "bald statement" about the claimant failing to pursue treatment was "not sufficient to justify discounting [the claimant's] credibility" without an analysis of "legitimate reason[s]" for why the claimant did not seek treatment); *Langley v. Kijakazi*, No. 21-cv-0178 DHU/SMV, 2022 WL 2681436, at *5 (D.N.M July 12, 2022) (finding that an ALJ "was required to consider and make explicit findings on why [the] [p]laintiff sought a level of treatment (that the ALJ found to be) inconsistent with disability").

In this case, the ALJ applied the two-step process for evaluating Plaintiffs' statements about his symptoms and determined that while Plaintiff's medically determinable impairments could have reasonably caused his symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with his "treatment history." AR at 22. Specifically, the ALJ noted that the "claimant's treatment history . . . is not indicative of someone with his level of limitations from impairment." *Id*. She found that Plaintiff had not had any "inpatient hospitalizations for psychiatric treatment" or "urgent emergency room visits for emotional crises" and that Plaintiff's mental health treatment was "conservative" and "sporadic" during his period of alleged disability medical record. AR at 28. She concluded that if "claimant's symptoms were so debilitating as to preclude even simple

10

work activities with few changes, he reasonably would have been expected to require more intensive palliative treatment." *Id*.

Despite her reliance on Plaintiff's treatment history for her finding that Plaintiff's statements were inconsistent with the record, the ALJ impermissibly neglected to provide any assessment of the potential reasons for why Plaintiff may have chosen not to seek treatment in a particular instance or for why Plaintiff's treatment was more "conservative" than the ALJ may have expected. *See* AR at 22-28. The ALJ's findings about the Plaintiff's treatment are thus "conclusory" and fail to describe a connection between evidence from the record and Plaintiff's decision not to pursue more aggressive treatment. *See* SSR 16-3p, 2017 WL 5180304, at *10; *Langley*, 2022 WL 2681436, at *5.

The ALJ's failure to "consider[] possible reasons" that Plaintiff did not "seek treatment consistent with the degree of his or her complaints" is reversible legal error. *See* SSR 16-3p, 2017 WL 5180304 at *9. This error is not harmless because a different adjudicator who applied the correct legal standard could have reasonably found that Plaintiff's reasons for not pursuing additional treatment did not diminish the veracity of Plaintiff's statements about his mental health symptoms or lead to inconsistencies between the Plaintiff's statements and the medical record. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that a finding of harmless error requires a court to

11

"confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

## VI.   CONCLUSION

For the foregoing reasons, the Court finds a reversible error in the ALJ's decision.  Therefore, the Court GRANTS Plaintiff's Motion to Reverse and Remand (*doc. 20*) and REMANDS the case to the Commissioner for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**